UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

EVON ROBINSON,

                             Petitioner,

        -against-

PHILIP HEATH, Superintendent, Sing Sing
Correctional Facility,

                           Respondent.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-2116 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Petitioner Evon Robinson brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his 2009 state convictions for manslaughter, tampering with physical evidence, and criminal possession of a weapon. Robinson asserts that the trial court (1) deprived him of his due process right to a fair trial by failing to meaningfully respond to a jury note requesting clarification on intoxication and its significance as an affirmative defense; and (2) violated his Fifth Amendment right not to incriminate himself by punishing him at sentencing for his refusal to admit that his sworn trial testimony was untruthful. For the reasons set forth below, Robinson's Petition is DENIED.

## I.    BACKGROUND

### A.    The Underlying Offense[1]

      In the early hours of August 2, 2005, Robinson left his house to procure drugs. (Def. App. Br. (Dkt. 7-7) at 9.) Robinson was in the midst of a crack cocaine binge that had lasted for "days." (Id.) After unsuccessfully attempting to purchase drugs, Robinson met Mary Roberts on

---

[1]    The following facts are drawn from Robinson's description of the evidence presented at trial as set forth in his direct appeal brief filed with the Appellate Division. (Def. App. Br. (Dkt. 7-7) at 4-11.)

1



the street. (Id.) Roberts helped Robinson buy crack cocaine and they then returned to

Robinson's house and got "high." (Id. at 7.) At some point thereafter, Robinson confronted

Roberts when he caught her looking through the pockets of a pair of his pants. (Id. at 7, 9.)

Roberts pulled a knife out of her pocketbook, demanded Robinson's money, and "slashed at"

him when he refused. (Id. at 9.) Robinson struggled with Roberts over the knife and threw

things at her to get her to drop it. (Id. at 7, 9-10.) During this struggle, Roberts, who had been

standing on the bed, fell to the floor. (Id. at 10.) Robinson then put his hand over her mouth to

stop her from screaming. (Id. at 7.) After Roberts stopped screaming, Robinson noticed that she

was bleeding and saw a knife sticking out of her. (Id.) Roberts stopped moving and Robinson

realized she was dead. (Id.) Robinson "sat there for hours" looking at Roberts's body, before

falling asleep. (Id.) When Robinson later awoke, he was in "shock" and a "panic" and began to

clean the house. (Id.) Robinson then moved Roberts's body to the bathtub and covered it with

garbage bags. (Id. at 7-8.)

Robinson subsequently contacted two friends—Malcolm Owens and Mattis Edwards—to

help him dispose of Roberts's body, but both refused. (Id. at 4-5.) Ultimately, Edwards reported

to a police officer that he believed there was a body in Robinson's house. (Id. at 5.) The police

went to Robinson's house where they found Roberts's body in the bathtub. (Id. at 5-6.) An

autopsy of Roberts's body revealed four stab wounds to the left side of her torso, a stab wound

below her left knee, and a blunt force injury to the top of her head. (Id. at 8.)

## B.      Trial Court Proceedings

Robinson was charged in New York Supreme Court, Queens County, with one count of

Murder in the Second Degree, two counts of Tampering with Physical Evidence, and one count

of Criminal Possession of a Weapon in the Fourth Degree. (Aff. of Laura T. Ross in Opp'n to Pet. for Writ of Habeas Corpus (Dkt. 8) ("Ross Aff.") ¶ 5.)

Robinson proceeded to a jury trial before the Supreme Court, Queens County. (Ross Aff. ¶ 5.) Malcolm Owens, Mattis Edwards, a member of the New York City Medical Examiner's Office, and a number of members of the New York City Police Department testified as prosecution witnesses. (Ross Aff. ¶¶ 6, 8 & 11-26.) Robinson testified on his own behalf for the defense. (Ross Aff. ¶ 28.) The trial court submitted six counts to the jury for consideration: one count of second-degree murder, one count of first-degree manslaughter, one count of second-degree manslaughter, one count of fourth-degree criminal possession of a weapon, and two counts of tampering with physical evidence. (Trial Tr. (Dkt. 7-5) at 867-77.)

On January 21, 2009, the jury convicted Robinson of first-degree manslaughter, fourth-degree criminal possession of a weapon, and two counts of tampering with physical evidence. (Trial Tr. at 897-98.) On February 4, 2009, the court sentenced Robinson to concurrent prison terms of twenty-one years for the manslaughter conviction, one and one-third to four years for each count of tampering with physical evidence, and one year for the conviction for criminal possession of a weapon. (Sentencing Tr. (Dkt. 7-5) at 23-26.)

## C. Direct Appeal

On February 5, 2009, Robinson appealed his judgment of conviction to the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"). (Ross Aff. ¶¶ 35-36.) Robinson argued that: (1) the trial court deprived him of his due process right to a fair trial by failing to meaningfully respond to a jury note requesting clarification on intoxication and its significance as an affirmative defense; and (2) violated his Fifth Amendment right not to

incriminate himself by punishing him at sentencing for his refusal to admit that his sworn trial testimony was untruthful. (Id.)

On November 30, 2010, the Appellate Division affirmed Robinson's judgment of conviction in a one paragraph opinion. People v. Robinson, 911 N.Y.S.2d 670 (2d Dep't 2008). With respect to Robinson's first claim, the court noted that "the factors to be evaluated are the form of the jury's question, the particular issue of which inquiry was made, the supplemental instruction actually given, and the presence or absence of prejudice to the defendant." Id. The court concluded that "[u]nder all the facts of th[e] case, [Robinson] was not prejudiced when the trial court declined to deliver the specific additional charge he requested." Id. The court further concluded that "under the particular facts of th[e] case, [Robinson's] remaining contentions d[id] not require a reversal or modification of the judgment." Id. at 671. On March 7, 2011, Robinson was denied leave to appeal the Appellate Division's decision to the New York Court of Appeals. People v. Robinson, 946 N.E.2d 188 (2011).

### D.  Petition for Writ of Habeas Corpus

On April 27, 2012, Robinson submitted the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus ("Pet") (Dkt. 1) at 1.) He asserts the same two claims as in his appeal, that: (1) the trial court failed to meaningfully respond to a jury note requesting clarification on intoxication and its significance as an affirmative defense, thereby depriving him of his due process right to a fair trial; and (2) the court's consideration at sentencing of his refusal to admit that his sworn trial testimony was untruthful punished him for exercising his Fifth Amendment right not to incriminate himself. (Pet. at 4.) Respondent submitted a memorandum of law in opposition to the Petition (Resp. Opp'n (Dkt. 8)), and Robinson replied (Pet. Reply (Dkt. 12)).

4

## II.    HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A.    Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a

petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, *every* claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA— whereby a district court may deny an entire habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). That is, a court may on the merits deny but not grant "mixed petitions". Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

### B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's

refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."[2] Id.

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so*—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Philbert v. Brown, 11-CV-1805 (NGG), 2012 WL 4849011 at *6 (E.D.N.Y. Oct. 11, 2012) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings") (quoting Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991)). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can *no longer* be brought in state court, the court may consider the petitioner's remaining claims on the merits so long as *those* claims have been exhausted. See Turner, 262 F.3d at 122-23.

---

[2]     As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

## C.  AEDPA Deference

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA, which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.   DISCUSSION

### A.      Trial Court's Response to Jury Request for Clarification

Robinson argues that the trial court deprived him of his due process right to a fair trial by failing to respond meaningfully to a jury note requesting clarification on intoxication and its significance as an affirmative defense. (Pet. at 4.) The Appellate Division rejected this claim on the merits. See People v. Robinson, 911 N.Y.S.2d 670 (2d Dep't 2008). For the reasons that follow, the court concludes that the Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

"In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." See Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985); see also Gibbs v. Donnelly, 402 Fed. App'x 566, 568 (2d Cir. 2010) (quoting Casillas, 769 F.2d at 63). That "federal habeas corpus relief does not lie for errors of state law," Lewis v. Jeffers, 497 U.S. 764, 780 (1990), "does not mean, however, that errors under state law"—for instance, jury instructions—"cannot result in cognizable violations of a constitutional right to due process," Davis, 270 F.3d at 124 (2d Cir. 2001). A violation of due process depends "on the elements of, and defenses to, crimes" under a particular state law. Id. Accordingly, "while [the court] may

9

not grant habeas relief for a 'mere error of state law,' a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination [of] whether that error violated the petitioner's federal due process rights." Id. (citation omitted).

The United States Supreme Court's "habeas precedent places an 'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." Id. (quoting Middleton v. McNeil, 541 U.S. 433, 437 (2004)); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which th[e] instruction [at issue] was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."). "Rather, the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington, 555 U.S. at 190-91 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). In determining whether it is reasonably likely that this has occurred, "the jury instruction 'may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.'" Id. at 191 (quoting Estelle, 502 U.S. at 72). The court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

Cupp, 414 U.S. at 147. A "slight possibility" that the jury instruction has been misapplied by the jury is not sufficient. Weeks v. Angelone, 528 U.S. 225, 236 (2000).

In evaluating a claim for federal habeas relief, the court must answer the following three questions: (1) whether some form of clarification regarding the intoxication charge "was required as a matter of New York State law"; (2) "if so, . . . [whether] the failure to give the requested clarification violated the standard set out [by the Supreme Court] in Cupp"; and (3) "if so, . . . [whether] the state court's failure is of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254(d)." Davis, 270 F.3d at 124; see also Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005).

### 1. Jury Clarification Under New York Law

The first question is whether New York State law entitled Robinson to more than a mere repetition of the original jury charge on intoxication in response to the jury's request for clarification. The court finds that it did not.

In response to a jury request for "further instruction or information with respect to the law," New York Criminal Procedure Law provides that the court "must give such requested information or instruction *as the court deems proper*." N.Y. Crim. Pro. Law § 310.30 (McKinney 2013) (emphasis added). New York law, thus, affords the trial court some discretion in responding to a jury's request for clarification. See People v. Malloy, 434 N.E.2d 237, 240 (1982) ("The trial court . . . is vested with some measure of discretion in framing its response and is in the best position to evaluate the jury's request in the first instance."). Nevertheless, "New York law provides that upon a request from the jury for further instruction or information . . . the trial court must respond in a '*meaningful*' way' to such inquiries" Corines v. Superintendent, Otisville Correctional Facility, 621 F. Supp. 2d 26, 37 (E.D.N.Y. 2008) (Garaufis, J.) (emphasis

added); see also Malloy, 434 N.E.2d at 239 ("It has long been the law in [New York] that the trial court, in responding to jury inquiries, must give *meaningful* supplemental instructions.") (emphasis added).

Adhering to these guidelines, however, does not mean that a rereading of the original charge is per se insufficient or prohibited. See Malloy, 434 N.E.2d at 239-40; see also Dell'Aera v. James, No. 12-CV-00344 (JFB), 2012 WL 6632673, at *10 (E.D.N.Y. Dec. 20, 2012) ("The trial court may, in its discretion, choose to merely reread the original charge read to the jury in response to their question."). A "[s]imple reiteration of an original instruction may . . . constitute a meaningful response sufficient to satisfy the statutory mandate . . . when the original instruction is accurate and 'where the jury expresses no confusion [regarding the original charge.]'" People v. Santi, 3 N.Y.3d 234 (2004) (alteration in original); see also Corines, 621 F. Supp. 2d at 37-38 ("[A] reiteration of the original charge may suffice, under appropriate circumstances, as meaningful supplemental instructions.") (internal quotation marks omitted). "It is only 'where the court fails to give information requested upon a vital point' that an omission cannot be ignored." Malloy, 434 N.E.2d at 240 (quoting People v. Gonzalez, 56 N.E.2d 574, 577 (1944)); see also United States v. Moran-Toala, 726 F.3d 334, 342 (2d Cir. 2013) ("A jury instruction is erroneous if it . . . does not adequately inform the jury on the law.").

There are, however, circumstances in which it is inappropriate to simply reread a jury instruction. "[I]f the jury subsequently expresses the need for further instructions, it may well constitute error simply to repeat the charge, for then it may be obvious that the jurors have been left without adequate guidance." Malloy, 434 N.E.2d at 240. The focus is on whether "the jury, misled by or not comprehending the original charge, remains perplexed about the elements of the crime or the application of the law to the facts." Id. Ultimately, the court evaluates four factors

12

to determine whether a trial court has responded "meaningfully" to a jury request: (1) "the form of the jury's question";[3] (2) "the particular issue of which inquiry is made"; (3) "the supplemental instruction actually given"; and (4) "the presence or absence of prejudice to the defendant." Id. (citing People v. Jackson, 20 N.Y.2d 440 (1967); People v. La Marca, 3 N.Y.2d 452 (1957)); see also Gaskin v. Graham, 08-CV-1124 (JFB), 2009 WL 5214498 (E.D.N.Y. Dec. 30, 2009).

The court finds that the trial court's rereading of the original jury instruction on intoxication was adequate for several reasons. First, the trial court's original instruction was a clear and accurate statement of New York's law on intoxication. See Malloy, 434 N.E.2d at 240 (emphasizing that the "original charge given in th[e] case was neither confusing nor inaccurate"); People v. Davis, 504 N.Y.S.2d 885, 889 (4th Dep't 1986) ("A controlling factor in whether the court erred in rereading its instruction is whether the original charge was clear and accurate."). Under New York Penal Law § 15.25 (McKinney 2013), "[i]ntoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged." The trial court charged the jury on intoxication as follows:

> Under our law, intoxication is not [as] such a defense to a criminal charge. But evidence of a defendant's intoxication may be considered whenever it is relevant to negate an element of the crime charged. Thus, in determining whether the defendant had the intent necessary to commit a crime, you may consider whether the defendant's mind was affected by intoxication to such a degree that he was incapable of forming the intent necessary for the commission of that crime.
>
> Intoxication is not to be applied or considered to the charge of the lesser included charge of manslaughter in the second degree. I just want to repeat, the lesser included offenses [sic].

---

[3]     This factor "may have to be clarified before it is made." Malloy, 434 N.E.2d at 240.

13

(Trial Tr. at 877-78.) Thus, the trial court's instruction was an almost word for word recitation of the effect of intoxication upon liability provided by New York State law and, accordingly, a clear and accurate statement of New York's law on intoxication.

Second, the original instruction was responsive to the jury's request and the jury did not request additional clarification on that particular issue, thereby indicating that they were not "perplexed or misled," but, rather, satisfied with the response. See Malloy, 434 N.E.2d at 240 ("When the jury requests further instructions on [a] legal point, such request does not necessarily import that the jury was perplexed or misled by the original charge. Rather, the jury simply may wish to have that critical concept refreshed in their minds or explained in isolation, without the distractions of the remaining portions of the full charge."). Following the original jury charge, during its deliberations, the jury sent a note to the court stating: "we need clarification on the matter of the intoxication. What does intoxication mean in reference to this case?"[4] (Id. at 882.) The trial court stated its intent to "recharge [the jury] on intoxication as [it] did previously." (Id.) Robinson's attorney objected to the trial court's proposal on the grounds that it didn't answer the jury's question, and asked that the instruction include that intoxication "does apply to murder in the second degree and manslaughter in the first degree." (Id. at 883.) The prosecutor believed that the court's instruction "was clear," but nonetheless consented to Robinson's proposed addition to the charge. (Id.) The trial court declined to instruct the jury as such and instead repeated the original charge without modification. (Id. at 883-86.) The trial court did, however, note that it would readdress the issue if the jury requested further clarification. (Id. at 884.)

---

[4]    The note also asked for the definition of "intent" with regard to second-degree murder. (Trial Tr. at 877-78.)

14

The trial court's rereading of the original charge responded meaningfully to the jury's request for clarification by (1) reiterating the law on intoxication, and (2) relating it to the case by noting that intoxication would not apply to the charge of second-degree manslaughter. (See Trial Tr. at 877-78.) The jury confirmed the adequacy of the trial court's response by not requesting additional clarification and later issuing a verdict. See Gaskin, 2009 WL 5214498 at *20; see also People v. Almodovar, 464 N.E.2d 463, 466 (1984) (finding the trial court did not err by refusing to provide supplemental instructions where there was no indication that "the jurors were dissatisfied with the instructions given" and the jury "did not ask for further instructions"); Malloy, 434 N.E.2d at 240 ("In determining the most appropriate way to handle [the jury's] request, the court took the view that the original charge could be made no clearer and that any attempt to alter it in light of the extensive deliberations already undertaken would only generate confusion. Although the better practice would have been to inquire of the jury what was unclear to them, they gave no indication after the original charge was repeated that their concern had not been satisfied."); People v. Dawkins, 542 N.Y.S.2d 284, 286 (2d Dep't 1989) (stating that "[t]he mere fact that the court relied on its prior instructions in responding to the jury's request for supplemental instructions does not give rise to reversible error where, as here, there was no showing that the jury was perplexed or confused after the repeated instructions"); Davis, 504 N.Y.S.2d at 889 ("[T]he court did not err in reiterating its original instructions on justification."). Moreover, the trial court expressed its willingness to consider additional measures had the jurors requested further clarification, which they did not. (Id. at 884.)

Finally, it does not appear that the failure to provide the jury instruction requested by defense counsel altered the outcome in this case or resulted in any prejudice to the Robinson. The trial transcript demonstrates that it was justification, and not intoxication, that was the

15

central to the defense's theory. Despite references to intoxication during the trial, the defense case, particularly the summation and Robinson's own testimony, focused primarily on the theory that Robinson had acted in self-defense when Roberts attacked him with a knife—a theory with which the jury did not agree. (See Trial Tr. at 701-04, 794-95, 806-07.) In finding Robinson guilty of fourth-degree criminal possession of a weapon, the jury necessarily found that he was *not* so intoxicated that he was unable to form "intent"—specifically, the intent to use a knife unlawfully against another.[5] Consequently, Robinson has failed to demonstrate any prejudice resulting from the trial court's decision to reread the initial charge.

In sum, the court finds that the trial court's decision to re-read the original charge on intoxication was a "meaningful response" to the jury's request under New York law and did not result in any prejudice to Robinson. See Corines, 621 F. Supp. 2d at 37.

### 2. *Due Process*

The next question for the court is whether the trial court's rereading of the original intoxication instruction constituted a violation of Robinson's due process rights. The court concludes that it did not.

The Supreme Court has distinguished between cases in which the jury instruction is "palpably erroneous" and those—like here—where the correctness of the instruction is not at issue. Weeks v. Angelone, 528 U.S. 225, 231 (2000) (quoting Bollenbach v. U.S., 326 U.S. 607, 611 (1946)). In cases of jury clarification, where a "jury [is] adequately instructed, and . . . the trial judge respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, . . . the Constitution requires

---

[5] Under N.Y. Penal Law, "[a] person is guilty of criminal possession of a weapon in the fourth degree when: (2) He possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon *with intent to use the same* unlawfully against another. N.Y. Penal Law § 265.01 (McKinney 2013) (emphasis added).

[no]thing more." Weeks, 528 U.S. at 234. Even if the trial court did err under state law by simply rereading the original charge on intoxication, "[a] mere error of state law does not deny a defendant his right to due process." Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1990); see McCray v. Conway, No. 10-CV-5138 (RJS), 2011 WL 291698, at *9 (S.D.N.Y. Feb. 2, 2011) ("Even if it could be said that the failure to give the instruction violated New York State law, there are no Supreme Court cases requiring that an intoxication charge be given to a jury in any circumstances . . . .").

Rather, the error must meet the standard articulated by the Supreme Court in Cupp v. Naughten, 414 U.S. 141, 146 (1973). The Cupp standard "for establishing a due-process violation based on a jury instruction is rigorous" and requires that "a petitioner demonstrate not only that the instruction was erroneous, but also that the error violated a right guaranteed to him by federal law." Cotto v. Fischer, No. 09-CV-9813 (SAS), 2012 WL 5500575, at *36 (S.D.N.Y. Aug. 23, 2012) (internal quotation marks omitted). Thus, the question is whether the error—in this case, the trial court's failure to provide clarification on the issue of intoxication—"so infected the entire trial that the resulting conviction violates [the defendants] due process" rights. Cupp. 414 U.S. at 147. Here, it did not.

The trial court's decision to reread a legally correct charge that was responsive to the jury's request was by no means unreasonable. See Cotto, 2012 WL 5500575, at *38 ("[G]iven that the reiteration of the charge was just that—a repetition of the initial charge—the decision by the trial court to re-read the charge as opposed to offering a different response did not 'so infect' the trial as to violate petitioner's rights."); Hearns v. Artus, Nos. 08-CV-192 (NGG), 08-CV-218 (NGG), 2010 WL 2653380, at *8 (E.D.N.Y. June 23, 2010) ("The trial judge's decision to reread the original charge was reasonable and did not violate Petitioners' constitutional due process

rights."); Martinez v. Ercole, No. 06-CV-13523 (RJS), 2010 WL 1779351, at *6 (S.D.N.Y. Apr. 21, 2010) ("Because the jury charge [on intoxication] was neither legally incorrect nor misleading, Petitioner's claim that it deprived him of a fair trial lacks merit."). For the reasons discussed above in Section III.A.2, the original jury instruction on intoxication was a clear and accurate statement of New York's law on intoxication, and its repetition was a meaningful response to the jury's request for clarification—one that, ultimately, did not affect the outcome or result in any prejudice to the defendant in this case. Moreover, even if the trial court did err under state law—which it did not—by simply rereading the original charge on intoxication, the error still did not violate Robinson's due process rights. See McCray v. Conway, No. 10-CV-5138 (RJS), 2011 WL 291698, at *9 (S.D.N.Y. Feb. 2, 2011) ("Even if it could be said that the failure to give the instruction violated New York State law, there are no Supreme Court cases requiring that an intoxication charge be given to a jury in any circumstances . . . .").

Accordingly, the court concludes that the trial court's decision to reread the original jury charge on intoxication did not violate Robinson's constitutional right to due process.

### 3. Availability of Relief Under 28 U.S.C. § 2254(d)

As discussed above in Section II.C, "an application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).

Robinson has failed to demonstrate that the challenged instruction resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d). Robinson cites two Supreme Court decisions, Graham v. Conner, 490 U.S. 386 (1989), and Aetna Life Ins. Co v. Davey, 123 U.S. 739 (1887), as "precedent for the jury to receive proper instruction as to how intoxication affected the present case." (Reply to Opp. (Dkt. 10) at 17-18.) However, both decisions are inapposite to the petition before the court. Graham concerned neither jury instructions nor a habeas petition, but, rather, a 42 U.S.C. § 1983 action in which the Court addressed "what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." Graham, 490 U.S. at 388. Despite Robinson's attempt to analogize "the Fourth Amendment and its 'reasonableness standard . . . to a deliberating jury requesting clarification of [sic] intoxication where such applies to the severity and/or degree of liability in a criminal case before a state court," the court is not persuaded. (Reply to Opp. at 17.) Likewise, while Aetna Life did involve an erroneous jury instruction with regard to "intemperate use of alcoholic stimulants," the error lay in explaining the terms of an insurance contract and not the application of federal—or even state—law. Aetna Life, 123 U.S. at 742. Thus, Robinson's contention that Aetna is of precedential value is misplaced. Simply put, neither Graham nor Aetna is of import to this case.

An additional overview by this court of the law surrounding jury clarification in the habeas context, as discussed above in Section III.A, reveals that the trial court's decision to reread the original jury charge on intoxication did not violate Robinson's constitutional right to due process. Consequently, the Appellate Division's rejection of this claim on the merits was

not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

**B.      Sentencing Claim**

Robinson argues that trial court penalized him at sentencing for refusing to admit that his sworn testimony was untruthful, thus violating his Fifth Amendment right against self-incrimination. (Pet. at 4.) The Appellate Division rejected this claim on the merits. See Robinson, 911 N.Y.S.2d at 671. For the reasons that follow, the court concludes that the Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

Under the Fifth Amendment of the United States Constitution, an individual may not be "compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. A defendant's Fifth Amendment right remains with the defendant throughout the sentencing phase of a criminal trial. See Mitchell v. United States, 526 U.S. 314, 329 (1999) ("[W]e must accord the privilege [to not testify against oneself during a criminal trial] the same protection in the sentencing phase of any criminal case as that which is due in the trial phase of the same case.") (citation omitted). Therefore, "[a]ny effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." Id. at 326 (alteration in original) (quoting Estelle v. Smith, 451 U.S. 454, 463 (1981)); see also United States v. Goodwin, 457 U.S. 368, 372 (1982) ("To punish a person because he has done what the law plainly allows him to do is a violation of the most basic sort."). "Accordingly, a sentencing court may not increase a defendant's sentence because he invoked his right to remain silent at the sentencing phase of trial." Weinberg v. Warden Riker's Island Corr. Facility, No. 11–CV–0614

(CBA), 2012 WL 5834393, at *9 (E.D.N.Y. Nov. 16, 2012) (quoting <u>Mitchell</u>, 526 U.S. at 328-29).

Although a defendant may not be compelled to testify at trial or allocute at sentencing, the trial court is still permitted to "clarif[y] that absent any explanation for his behavior, [the defendant] would not be granted leniency in sentencing." <u>El v. Artuz</u>, 105 F. Supp. 2d 242, 255 (S.D.N.Y. 2000). In that regard, "federal courts recognize a distinction between increasing the severity of a sentence and refusing to grant leniency at sentencing when a defendant fails to accept responsibility for his actions." <u>Weinberg</u>, 2012 WL 5834393, at *9; <u>see also</u> <u>United States v. Stratton</u>, 820 F.2d 562, 564 (2d Cir. 1987) (noting the "distinction between increasing the severity of a sentence for a defendant's failure to cooperate and refusing to grant leniency"). In fact, lack of remorse and failure to acknowledge responsibility consistently have been recognized as constitutionally-permissible factors that courts may take into account in determining an appropriate sentence. <u>See</u> <u>Miller v. Walker</u>, 413 F. Supp. 2d 251, 261 (W.D.N.Y. 2006) ("It is well-recognized that a defendant's manifestation of remorse and his acceptance of responsibility for his conduct are proper factors to consider in sentencing."); <u>Artuz</u>, 105 F. Supp. 2d at 255 ("Although a defendant has a right to remain silent, a defendant's refusal to acknowledge any responsibility or to show any remorse in the face of clear evidence of wrongdoing is surely an appropriate factor for a sentencing judge to consider when choosing an appropriate sentence from within a range of statutorily-permissible sentences."); <u>Geraci v. Senkowski</u>, 23 F. Supp. 2d 246, 267-68 (E.D.N.Y. 1998) ("A sentencing judge may properly consider a defendant's remorse, or lack thereof, in determining a sentence. Doing so does not infringe a defendant's Fifth Amendment rights.").

However, "[t]he distinction between withholding leniency and increasing a penalty is 'difficult to apply.'" United States v. Rivera, 201 F.2d 99, 101 (2d Cir. 1999) (quoting Stratton, 820 F.2d at 564). "Whether [a sentencing] differential is a reward for cooperation or a penalty for invoking a constitutional right depends on the benchmark—the 'normal' sentence that would be meted out if constitutional rights were not salient." United States v. Whitten, 610 F.3d 168, 195 (2d Cir. 2010) (quoting United States v. Klotz, 943 F.2d 707, 710 (7th Cir.1991)). Accordingly, "as long as the sentences [falls] within the [statutory] range, it [i]s not properly conceptualized as a 'penalty.'" Rivera, 201 F.2d at 102 (quoting Klotz, 943 F.2d at 710-11).

At sentencing, Robinson made a statement to the court in which he stated, among other things: "I am not guilty of killing anyone, including Mrs. Roberts." (Sentencing Tr. at 15.) Subsequently, the court and Robinson engaged in the following exchange:

THE COURT: . . . . I never know what I am going to sentence a person to until I actually do it. And I always like to hear and listen closely to what the person in front of me has to say, and I've listened carefully to what you had to say. Now there were two people in that room back then in August 2, 2006 [sic] . . . . One of them is no longer living. Now you don't have to, but I would like to know what happened in that room, because what you said on the witness stand was not the truth. The jury did not believe you. Another person's life was taken by your hands. You tried to make up some kind of a self-defense, which it was not. I would like to know the truth of what happened there. This is your last chance to act like a man, all right, because you can either get eight years or twenty-five years. There is a 17 year range in that whole line of years. Do you understand me?

THE DEFENDANT: Yes, sir.

THE COURT: Now you know what happened in that room. You are blocking it out because you don't want to remember. Your first step to rehabilitation is to admitting what you did. And that little speech you gave me did not take any blame for anything that you did. Now do you want to tell me what happened or [do] you want to rely on that statement which is not the truth? You know it's not the truth. Something happened in that room that caused you to do this. Do you want to tell me what happened, or you don't have to.

THE DEFENDANT: Your honor, I stand by what I said. A lot of it is a blur, but what I do remember is I did not pull a weapon, I did not attack Mrs. Roberts and I didn't intend her no harm, because my only intent was to smoke.

THE COURT: Mr. Robinson, she was stabbed five times, all right.

THE DEFENDANT: Your honor, I tend to differ.

THE COURT: Five.

THE DEFENDANT: I tend to differ. Because I tried explaining before, that as far as my recollection, there was only one incident which she had been stabbed or fell on the weapon . . . . When she fell and got impaled by the weapon.

THE COURT: With all due respect, with all due respect, people don't fall on knives, all right. That's a common joke that we deal with in the criminal justice system.

THE DEFENDANT: Your honor.

THE COURT: People don't fall on knives, all right, *you are asking me . . . . to be lenient with you* and you are not coming forth with the truth, if that's your position.

THE DEFENDANT: Excuse me, sir. If there was one impalement wound, believable, because they insist it's five, it's less believable, but as far as I'm concerned, I did not stab this Mrs. Roberts five times.

THE COURT: You didn't stab her?

THE DEFENDANT: No, sir.

THE COURT: So you are claiming you are innocent?

THE DEFENDANT: Of attempted murder, sir.

THE COURT: You got convicted by this jury of manslaughter in the first degree.

THE DEFENDANT: Like I said, I am guilty of bad choices, using cocaine, lot of things, but attempting to kill another human being, no, sir.

THE COURT: No, you got convicted of killing another person with the intent to cause serious physical injury to that person. Last chance to come forward with the truth.

THE DEFENDANT: I am trying to do the best I can, your Honor. Like I said, I had no intent to kill anyone.

. . . .

THE COURT: I am going to ask you one more time, I am giving you the chance to tell me what happened . . . . [N]ow tell me what happened. If you want to.

23

THE DEFENDANT. Sir.

THE COURT: You don't have to.

THE DEFENDANT: . . . . I never intended to kill anyone.

THE COURT: All right. The record speaks for itself, the testimony speaks for itself. Your testimony speaks for itself. Your statement[] speaks for itself, the testimony of the medical examiner is clear in the record . . . . You wish to add anything to your statement before I sentence you on the manslaughter in the first degree?

THE DEFENDANT: Yes, sir. You accused me of not caring about Mrs. Roberts . . . . I regret what happened to Mrs. Roberts. But, sir, the drug is, I don't want to put everything on the drug, but that's the nature of it . . . .

THE COURT: You still don't get it. You still don't get it. That's your problem, your personal problems and your family. This woman who you didn't even know her name, you introduced yourself into her life and then you caused her to lose her life. You took her life. And all you're doing is blaming it on crack. That's not the right thing to do. On the first count, manslaughter in the first degree, the sentence of the Court is a determinate sentence in state prison, 21 years.

(Id. at 16-25 (emphasis added).)

Based on this exchange, as well as an overall review of the record, the court finds no evidence that the trial court imposed a harsher sentence on Robinson as punishment for exercising his constitutional right against self-incrimination. Instead, the record demonstrates that, at most, the trial court declined to show leniency as a result of Robinson's lack of remorse and his failure to acknowledge responsibility for his actions. The trial judge specifically mentioned that he sought a confession from Robinson as the "first step towards rehabilitation" and as a reason "to be lenient with" Robinson in the sentencing. (Sentencing Trans. at 19.) The trial judge gave Robinson ample opportunity to accept responsibility for his actions prior to being sentenced on the first-degree manslaughter charge. Although the trial court's questioning was arguably intrusive, ultimately, sentence imposed—twenty-one years—was within the statutory limits and below the maximum sentence of twenty-five years requested by the

24

prosecutor and authorized by state statute. See Miller, 413 F. Supp. 2d at 261-62; (Proceedings Trans. (Dkt. 7-5) at 9.) Accordingly, there is nothing in the record or sentence to suggest that the trial judge impermissibly increased Robinson's sentence as punishment for Robinson's refusal to admit guilt or acknowledge responsibility. See Rivera, 201 F.2d at 102.

In sum, Robinson's sentence was based on constitutionally-permissible factors and the Appellate Division's rejection of his claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

## IV.   CONCLUSION

For the reasons set forth above, Robinson has failed to meet his burden of establishing that the state court's denial of his claims for relief "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). Accordingly, his Petition for Writ of Habeas Corpus is DENIED. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       October 22, 2013

NICHOLAS G. GARAUFIS
United States District Judge